Kasey C. Nye (#020610)
knye@waterfallattorneys.com

WATERFALL ECONOMIDIS CALDWELL
 HANSHAW & VILLAMANA, P.C.
5210 E. WILLIAMS CIRCLE, SUITE 800
TUCSON, ARIZONA 85711
TELEPHONE (520) 790-5828
FACSIMILE (520) 745-1279

René S. Roupinian, Esq. *(pro hac vice forthcoming*
jar@raisnerroupinian.com
Jack A. Raisner, Esq. *(pro hac vice forthcoming)*
rsr@raisnerroupinian.com

RAISNER ROUPINIAN LLP
270 MADISON AVENUE, SUITE 1801
NEW YORK, NY 10016
TELEPHONE: (212) 221-1747

*Attorneys for Plaintiff and the putative Class*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Stephanie Garrett, an individual on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>Santa Cruz Valley Regional Hospital, LLC d/b/a Santa Cruz Valley Regional Hospital, a Delaware registered limited liability company<br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF WARN ACT 29 U.S.C. § 2101, *et seq*. and ARIZONA WAGE ACT, A.R.S. § 23-355(a)** |

Plaintiff Stephanie Garrett ("Plaintiff") alleges on behalf of herself and a putative class of similarly situated former employees of Santa Cruz Valley Regional Hospital, LLC d/b/a/ Santa Cruz Valley Regional Hospital ("Defendant") as follows:

**NATURE OF THE ACTION**

1. On July 22, 2022, Defendant terminated on one day's notice its hospital staff of approximately 300 employees.

2.  Defendant had committed to keep them employed until August 20, 2022, and pay out their unused, earned paid time off ("PTO") upon termination, neither of which it did.

3.  Plaintiff questioned these actions in a letter to Defendant's Chairman on July 27, 2022, citing the company's failure to inform the employees of their termination date 60 days in advance, as required by the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq.* and to pay the promised PTO and other wages, which are protected by the Arizona Wage Act ("AWA"), A.R.S. § 23-350 *et seq.*

4.  Plaintiff requested but received no written reply.

5.  Plaintiff, on behalf of herself and all similarly situated employees seeks to recover from Defendant 60 days' wages and benefits, pursuant to the WARN Act, and the unpaid wages they were promised under state law.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367 and 29 U.S.C. § 2104(a)(5).

7.  Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(1), (2) and 29 U.S.C. § 2104(a)(5).

## THE PARTIES

*Plaintiff*

8.  Plaintiff worked as a registered nurse for Defendant at its facility located at 4455 S 1-19 Frontage Rd., Green Valley, Arizona (the "Facility") until her termination on or about July 22, 2022.

*Defendant*

9.  Upon information and belief, Defendant Santa Cruz Valley Regional Hospital, LLC is a Delaware registered limited liability company.

10. Upon information and belief, Defendant Santa Cruz Valley Regional Hospital, LLC **was a full-service acute care facility** that provided medical and healthcare services in Green Valley, Arizona.

11. Upon information and belief and at all relevant times, Defendant is owned by Lateral Investment Management, LLC, a San Mateo, California-based investment firm.

12. Upon information and belief and at all relevant times, Lateral Management, LLC operated Defendant through affiliated companies SCVRH Holdings, LLC and SCVRH LandCo, LLC.

13. Defendant, SCVRH Holdings, LLC and SCVRH LandCo, LLC share the same mailing address at 4455 S 1-19 Frontage Rd, Green Valley, Arizona.

**Factual Statements Relating to Failure to Provide WARN Notice**

14. On or about June 20, 2022, Defendant notified its approximately 300 employees that the hospital would likely close on or before August 20, 2022.

15. On or about June 24, 2022, Defendant suddenly informed its employees that the hospital would stop providing all services on June 30, 2022 but stated the closure "does not modify our commitment to honor the date of August 20, 2022."

16. By letter dated July 21, 2022, Defendant announced that Plaintiff and the other similarly situated employees were terminated effective the next day, July 22, and the terminations ensued.

**Factual Statements Relating to the Failure to Pay Earned Wages**

17. After announcing on June 24 the surprise June 30 closure, Defendant sent employees a letter on June 28 reassuring them "we will still be paying employees till (sic) August 20th."

18. The June 28 letter also told the full-time employees that they were required to report to work as scheduled, because "[w]e have lots of work ahead of us and we will need all the help we can get."

19. The June 28 letter also told employees that Defendant was extinguishing any

3

1 earned PTO the employees held in their bank that exceeded 80 hours, but explained how
2 they could use their 80 hours of "earned" PTO and assured them that "once we close on
3 August 20th, your remaining balance if any will be paid out."

4     20. The letter even stated that those who resigned would be paid out their earned
5 hours of PTO.

6     21. Upon information and belief, Defendant's "termination policy" provided that
7 earned PTO would be paid out upon termination, and these promises were meant to
8 reassure and induce employees to work until August 20.

9     22. Upon their termination on July 22, Defendant informed Plaintiff and other
10 similarly situated former employees that they would not be paid anything for their earned
11 PTO, and none was paid on their final paycheck.

12     23. The final paychecks were reduced by the amounts of the employees'
13 contributions to their ongoing benefit plans, mainly health insurance, but Defendant
14 informed them that all benefits coverage ended on July 22, causing a further loss of earned
15 wages.

16     24. During the period July 11 to July 22, Defendant required hourly employees
17 to report to work, but on many days, Defendant sent them home early and did not pay them
18 for the entire day, furthering their loss of expected wages.

19 **CLASS ALLEGATIONS**

20     25. Plaintiff brings this class action claim pursuant to Fed. R. Civ P. 23(a), for
21 relief for violation of:

22     (a) the WARN Act, 29 U.S.C. § 2101 *et seq*., on behalf of herself and other
23 similarly situated former employees, pursuant to 29 U.S.C. § 2104(a)(5), who worked at or
24 reported to the Facility and were terminated without cause on or about July 22, 2022, and
25 within 90 days of that date, or were terminated without cause as the reasonably foreseeable
26 consequence of the mass layoff and/or plant closing ordered by Defendant on or about July

4

22, 2022, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5); and

  (b) the AWA, A.R.S. § 23-350 *et seq*., on behalf of herself and other similarly situated former employees, whose expected wage compensation as set forth in Defendant's policies and other express representations were not paid upon their termination on or around July 22, 2022 (the "Class").

  26 The persons in the Class identified above ("Class Members") are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendant.

  27. Upon information and belief, Defendant employed more than 100 full-time employees and more than 50 at the Facility.

  28. On information and belief, the identity of the members of the class and the recent residence address of each of the Class Members is contained in the books and records of Defendant.

  29. On information and belief, the rate of pay, accrued paid time off, and benefits that were being earned by each Class Member at the time of his/her termination is contained in the books and records of the Defendant.

  30. Common questions of law and fact exist as to each of the Class Members, including, but not limited to, the following:

  a) whether the Class Members were employees of Defendant who worked at or reported to the Facility;

  b) whether Defendant terminated the employment of the Class Members without cause on their part and without giving them 60 days advance written notice in violation of the WARN Act;

  c) whether Defendant unlawfully failed to pay the Class Members 60 days' backpay and benefits as required by the WARN Act; and

      d)      whether the Class Members were not fully paid their earned wages due to Defendant's failure to pay them in accordance with its policies and representations in June and July 2022.

31. Plaintiff's claims are typical of those of the Class. Plaintiff, like other Class Members, worked at or reported to the Facility and was terminated without cause on or about July 22, 2022 due to the mass layoff and/or plant closing ordered by Defendant.

32. Like the other Class Members, Plaintiff was not fully paid her earned wages due to Defendant's non-payment of any of her PTO hours upon termination.

33. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, including the WARN Act and wage payment litigation.

34. On or about July 22, 2022, Defendant terminated Plaintiff's employment as part of a mass layoff or a plant closing as defined by 29 U.S.C. § 2101(a)(2), (3), for which she was entitled to receive 60 days' advance written notice under the WARN Act, and was not fully paid her expected earned wages as defined by A.R.S. §23-350(5).

35. Class certification of these claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of WARN Act and wage payment litigation, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants, and damages suffered by individual Class Members are small compared to the expense and burden of individual prosecution of this litigation.

36. Concentrating all the potential litigation concerning the WARN Act and wage payment rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of

resolving the WARN Act rights of all the members of the Class.

37. Plaintiff intends to send notice to all Class Members to the extent required by Rule 23 of the FEDERAL RULES OF CIVIL PROCEDURE.

## CLAIMS FOR RELIEF

### First Claim: Violation of the WARN Act, 29 U.S.C. § 2101, *et seq*.

38. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

39. At all relevant times, Defendant employed more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

40. At all relevant times, Defendant was an "employer," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a), and continued to operate as a business until it decided to order a mass layoff or plant closing at the Facility.

41. On or about July 22, 2022, Defendant ordered a mass layoff and/or plant closing at the Facility, as that term is defined by 29 U.S.C. § 2101 (a)(2) and 28 CFR § 639.3(i).

42. The mass layoff or plant closing at the Facility resulted in an "employment loss," as that term is defined by 29 U.S.C. § 2101(a)(2) for at least fifty of Defendant's employees as well as thirty-three percent (33%) of Defendant's workforce at the Facility, excluding "part-time employees," as that term is defined by 29 U.S.C. § 2101(a)(8).

43. Plaintiff and the Class Members were terminated by Defendant without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoff or plant closing ordered by Defendant at the Facility.

44. Plaintiff and the Class Members are "affected employees" of Defendant, within the meaning of 29 U.S.C. § 2101(a)(5).

45. Defendant was required by the WARN Act to give Plaintiff and the Class Members at least 60 days advance written notice of their terminations.

46. Defendant failed to give Plaintiff and the Class members written notice that complied with the requirements of the WARN Act.

47. Plaintiff and each of the Class Members, are "aggrieved employees" of Defendant as that term is defined in 29 U.S.C. § 2104 (a)(7).

48. Defendant failed to pay Plaintiff and each of the Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 days following their respective terminations, and failed to make the pension and 401(k) contributions and provide employee benefits under COBRA for 60 days from and after the dates of their respective terminations.

49. The relief sought in this proceeding is equitable in nature.

**Second Claim: Unpaid Accrued Wages under A.R.S. § 23-355 (a)**

50. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

51. Title 23, Article 7 of the Arizona Revised Statutes § 23-350, defines "wages" as "nondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation."

52. Pursuant to A.R.S. § 23-355, if an employer, in violation of this chapter, fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages.

53. The Defendant offered vacation time, sick pay and other paid time off amounts to its employees in its internal policies and procedures.

54. Upon information and belief the terms of these policies were only described and made available to employees electronically online, the access to which Defendant cut off when terminating them on July 22.

55. Upon information and belief, Defendant's termination policy provided that employees would be paid their unused accrued PTO hours upon termination.

56. Defendant, in its letter of June 28, 2022, reinforced the expectation that it would pay employees their earned PTO hours that they had worked upon termination.

57. In the June 28, letter, however, Defendant told employees it was eliminating their earned PTO hours over 80 in their accounts, but it gave no reason for doing so.

58. Defendant reinforced in writing the expectation that it would pay employees to work their full schedules in the period July 11 to 22, 2022, but it paid them only partially for the days on which it sent or kept them home for its own convenience.

59. Plaintiff wrote to Steven Harris, Chairman of the Board of Defendant, a letter on July 27, 2022 requesting an explanation for, among other things, the reduction of employees' earned and available PTO hours, and the failure to pay out any PTO hours upon termination.

60. Plaintiff received no response in writing despite her request for a written explanation.

61. Defendant's violation of Arizona law to pay accrued PTO upon termination constitutes actionable bad faith conduct, given its failure to pay promised PTO wage amounts that it conceded they had "earned," without so much as an explanation.

62. As a result of Defendant's violation of A.R.S. § 23-355(a), Defendant is liable to Plaintiff and the other similarly situated former employees for treble damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated persons, prays for the following relief as against Defendant:

A. Certification of this action as a class action;

B. Designation of Plaintiff as the Class Representative;

C. Appointment of the undersigned attorneys as Class Counsel;

D. A judgment in favor of Plaintiff and the other similarly situated former employees equal to the sum of: their unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, and 401(k) contributions

and other COBRA benefits, for 60 days, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104 (a)(1)(A);

E.   A judgment in favor of Plaintiff and the other similarly situated former employees equal to the sum of their unpaid wages and damages under A.R.S. § 23-355 (a).

F.   Plaintiff's reasonable attorneys' fees and the costs and disbursements that the Plaintiff incurs in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104(a)(6); and A.R.S. § 23-355 (a).

G.   Such other and further relief as this Court may deem just and proper.

DATED:  August 11, 2022

WATERFALL, ECONOMIDIS, CALDWELL,
HANSHAW & VILLAMANA, P.C.

By:  /s/ *Kasey C. Nye #020610*
Kasey C. Nye

-and-

RAISNER ROUPINIAN LLP
René S. Roupinian, Esq. *(pro hac vice forthcoming)*
Jack A. Raisner, Esq. *(pro hac vice forthcoming)*

*Attorneys for Plaintiff and the putative Class*