JENNINGS HAUG KELEHER MCLEOD
WATERFALL LLP
5210 E. Williams Circle, Suite 800
Tucson, Arizona 85711
Telephone (520) 790-5828
Facsimile (520) 745-1279
Corey B. Larson (SBN 022549)
cbl@jkwlawyers.com

René S. Roupinian *(admitted pro hac vice)*
jar@raisnerroupinian.com
Jack A. Raisner *(admitted pro hac vice)*
rsr@raisnerroupinian.com
RAISNER ROUPINIAN LLP
270 Madison Avenue, Suite 1801
New York, NY 10016
Telephone: (212) 221-1747
*Class Counsel*

Laura Lawless (023951)
Laura.Lawless@squirepb.com
Kelly A. Singer (022024)
Kelly.Singer@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Telephone: (602) 528-4000
Facsimile: (602) 253-8129
*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephanie Garrett,<br><br>                    Plaintiff,<br><br>v.<br><br>SCVRH LLC,<br><br>                    Defendant. | No. 4:22-cv-00358-RCC<br><br>**JOINT MOTION AND MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT** |

Pursuant to FED. R. CIV. P. 23, Plaintiff Stephanie Garrett and Defendant SCVRH LLC submit this joint motion and memorandum of law seeking an order: 1) granting preliminary approval of the Settlement Agreement (attached as **Exhibit A**) (proposed preliminary approval order attached as **Exhibit B**); 2) approving the form and manner of Notice of Settlement (settlement class notice attached as **Exhibit C**); 3) scheduling a Fairness

Hearing to consider final approval of the Settlement Agreement; 4) entering a final order approving the Settlement Agreement after the Fairness Hearing (proposed final order attached as **Exhibit D**); and 5) granting related relief.

# I.    BACKGROUND

From July 2019 until July 22, 2022, Plaintiff worked for Defendant as a registered nurse at Santa Cruz Valley Regional Hospital, located at 4455 S. I-19 Frontage Road, Green Valley, Arizona (the "Hospital"). On July 22, 2022, Defendant terminated most of its Hospital staff—approximately 300 employees, including Plaintiff and the Class Members.

On August 11, 2022, Plaintiff filed a Rule 23(b)(3) class action lawsuit against Defendant (the "WARN Action") alleging that Defendant was an employer as defined by the WARN Act; that Defendant instituted a "mass layoff" and/or "plant closing"; and that it terminated the affected employees without giving a full sixty (60) days' advance written notice (ECF 1, ¶¶ 35, 39-46) The WARN Action also asserts claims for allegedly unpaid accrued paid time off ("PTO"). (*Id.*, ¶ 22)

On October 17, 2022, Defendant filed an Answer admitting it employed Plaintiff until her termination, and admitting further that, on July 21, 2022, it provided Plaintiff and certain other employees a letter informing them their employment would end effective July 22, 2022, sooner than Defendant had indicated in a prior written notice. (ECF 8, ¶¶ 8, 16) Defendant denies Plaintiff's remaining allegations and asserts several affirmative defenses, including the WARN Act's statutory defenses of "unforeseeable business circumstances" and the "faltering company exception," and alleges that Plaintiff and the putative class members are not entitled to PTO under the Arizona Wage Act (*Id.*, ¶¶ 64(b), (c), (d)).

On January 20, 2023, Plaintiff filed a Motion for Class Certification and Related Relief (ECF 18). On March 3, 2023, the Court certified a class consisting of:

> Plaintiff and other similarly situated former employees who (i) worked at [the Hospital]; (ii) were terminated without cause on July 22, 2022, or within ninety (90) days before or after July 22, 2022, as part of, or as the result of, a mass layoff or closing; (iii) are affected employees, within the meaning of

29 U.S.C. § 2101(a)(5); and (iv) have not filed a timely request to opt-out of the class. (ECF 21) The Court also appointed Plaintiff the class representative and her counsel the Class Counsel. (*Id.*) On April 5, 2023, the Notice of Class Action was mailed to 317 putative Class Members. (ECF 23). Nine putative class members elected to opt-out of the Class. (ECF 24).

The Parties have informally exchanged their theories of the case and relevant documents, including payroll data and damage calculations. On January 11, 2024, the Parties participated in mediation. The Parties did not settle that day but continued their discussions toward a consensual resolution. Following months of arm's length negotiations, the Parties reached a compromise that will fully and finally resolve Plaintiff's claims against Defendant (the "Settlement"). To avoid extensive, costly, and uncertain litigation, the Parties desire to enter a final settlement and release of all claims relating in any way to the WARN Action in accordance with the terms of this Settlement, subject to District Court approval.

## II.    JURISDICTION

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 1331, 1367 and 29 U.S.C. § 2104(a)(5). Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1), (2) and 29 U.S.C. § 2104(a)(5).

## III.   SIGNIFICANT TERMS OF THE SETTLEMENT

The key terms of the proposed Settlement Agreement (**Exhibit A**) are as follows:

**a.    Settlement Amount:** In full and final settlement of the WARN Action, Defendant shall pay $800,000 (the "Settlement Amount"). The Settlement Amount is inclusive of all amounts alleged to be payable in connection with the WARN Action, including, without limitation, Class Counsel's Fees, Class Counsel's Expenses, the Class Representative's Service Payment, costs of the Administrator, and any other applicable federal, state, or local taxes, if any.

**b.    Distribution of the Settlement Amount:** The Settlement Amount (after being reduced by the Class Representative Service Payment, Class Counsel's Fees, and Class Counsel's Expenses and costs of the Administrator) shall be distributed to individual Class Members on a *pro rata* basis (their "*Pro Rata* Share") based upon each individual Class Member's (i) average monthly gross wages or salary and any benefits under any employee benefit plan, (ii) their hire date, notice date, and termination date, based on Defendant's books and records, and (iii) their allegedly unpaid PTO (the "Back Pay"). The term "*pro rata*" shall mean the quotient of each Class Member's Back Pay for the Back Pay Period over the

aggregate Back Pay for all Class Members. The term "<u>Back Pay Period</u>" shall be up to sixty (60) days as calculated pursuant to the WARN Act.

**c.    <u>Class Representative Service Payment</u>:** Subject to the District Court's approval, the Class Representative shall receive a one-time payment of $12,500 in addition to her *pro rata* share of the Settlement Amount.

**d.    <u>Class Counsel's Fees and Expenses</u>:** Subject to the District Court's approval, Class Counsel shall receive attorneys' fees of one-third (1/3) of the Settlement Amount, net of (i) the Class Representative Service Payment, (ii) Class Counsel's Expenses, and (iii) the cost of the Settlement Administrator. Class Counsel's Expenses shall not exceed $25,000.

**e.    <u>Settlement Effective Date</u>:** The Effective Date of the Settlement Agreement shall be the date on which the Final Order approving the Settlement Agreement is entered and becomes final. The Final Settlement Order shall become final when the time for taking an appeal has expired or, in the event that an appeal has been taken, the day on which the Final Settlement Order has been affirmed with no further right of appeal.

**f.    <u>Release</u>:** Except for the rights expressly arising out of, provided for, or reserved in the Settlement Agreement, upon the Effective Date, the Class Members, for and on behalf of themselves, and their respective predecessors, successors, assigns, heirs, personal representatives and estates (collectively, the "<u>Releasing Parties</u>"), will fully and forever release and discharge Defendant and its current and former members, parents, subsidiaries, investors, and affiliated entities (including, without limitation, SCVRH Holdings LLC, Lateral SMA Agent LLC, and Lateral Investment Management, LLC), and each of their respective officers, directors, shareholders, agents, employees, partners, members, accountants, attorneys, representatives and other agents, and all of their respective predecessors, successors, and assigns (collectively, the "<u>Released Parties</u>"), of and from any and all claims, demands, debts, liabilities, obligations, liens, actions and causes of action, costs, expenses, attorneys' fees, and damages of whatever kind or nature, at law, in equity, or otherwise, whether known or unknown, anticipated, suspected, or disclosed, that the Releasing Parties may now have or hereafter may have against the Released Parties, including, but not limited to, any claims related to or based upon the WARN Act, the purported nonpayment or underpayment of wages, or any other federal, state, or local laws or regulations of similar effect (the "<u>Released Claims</u>"). Upon the Effective Date, the Class Members agree that any Released Claims shall be deemed waived without need for further court order. In addition, each Releasing Party shall be deemed upon the Effective Date to have released the Plaintiff from any and all claims, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, that he, she, or it may have against the Plaintiff, any successors or assignees to their legal interests, or any of their present or former agents, attorneys, or consultants arising out of any Released Claim or the terms of the Settlement.

**g.    <u>Residual Funds</u>:** Any distributions from the Settlement fund to Class Members that are not deposited or presented for payment within one hundred eighty (180) days of the distribution shall be deemed residual funds and shall be distributed to anyone omitted from the Class whom Class Counsel qualify to be Class Members, with any remaining funds donated to Towards Justice, a non-profit 501(c)(3) charitable organization.

## IV.    <u>THE BASIS FOR THE RELIEF REQUESTED</u>

**1.    The Proposed Compromise Should be Approved.**

The Ninth Circuit has a strong judicial policy favoring settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Pac. Enters. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). The universally applied standard for evaluating a proposed settlement is whether the settlement is fundamentally fair, adequate and reasonable. *City of Seattle,* 955 F.2d at 1276. Ninth Circuit courts consider the following criteria to determine whether a settlement is fair and equitable: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). The Settlement satisfies all relevant considerations.

## A.    Strength of the Plaintiff's Case

The Court first must weigh the strength of the Plaintiff's case relative to the "uncertainty as to what the outcome would be, had litigation continued." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). The Court must "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach" a settlement. *Id.*

Approval of a class settlement is appropriate in cases in which "there are significant barriers plaintiffs must overcome in making their case." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Plaintiff contends her case is strong, as she disputes the sufficiency and timing of the written WARN Act notice. Defendant contends it issued a written WARN Act notice that complies with the statute and that it has meritorious affirmative defenses justifying the terminations proceeding before the expiration of the 60-day notice period. Continued litigation poses risks to both Parties, including lengthy appellate review, favoring settlement.

**B.    The Risk, Expense, Complexity, and Likely Duration of Litigation**

Further discovery related to Defendant's affirmative defenses, specifically regarding Defendant's financial affairs and prospective business transactions leading to the accelerated terminations, would be fact intensive, time-consuming, and involve extensive third-party discovery. Though Plaintiff and Class Counsel are confident they could prove their claims, they understand their claims could be dismissed or narrowed at summary judgment, at trial, or on appeal. Further, even if the WARN Action resolved in Plaintiff's favor, the amount Plaintiff and the Class would be awarded in damages is uncertain. There is also a significant risk of collectability, which Class Counsel has investigated with diligence by holding discussions with Defendant's counsel and reviewing documents provided by Defendant regarding its ability to satisfy a judgment. A verdict likely would be appealed, delaying resolution of the WARN Action. Such delays would not benefit Class Members, who instead will receive payments relatively soon under the proposed Settlement. The proposed Settlement avoids legal uncertainties and complex discovery and trial proceedings and provides the Class with immediate, meaningful, and certain monetary relief.

**C.    The Risk of Maintaining Class Action Status Through Trial**

The Court certified the Class on March 3, 2023. (ECF 21). Should this proposed settlement not be approved, Defendant could seek to de-certify the Class based on circumstances revealed during discovery involving individual Class Members' separations, the timing of the putative WARN Act notice, and Class Members' respective e entitlement to PTO. This risk is avoided by agreeing to compromise the WARN Act claim.

**D.    The Amount Offered in Settlement**

Although Plaintiff's estimated maximum recovery is significantly higher than the Settlement Amount, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). On the contrary, in assessing the settlement amount, "[i]t is the complete

package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *See Andersen v. Briad Rest. Grp.,* Case No. 2:14-cv-00786-GMN-BNW, 2022 WL 181262, * 4 (D. Nev. Jan. 19, 2022). Here, the Settlement Amount is an amount the Parties have agreed reasonably reflects the respective merits of the Parties' positions and the equities and is an amount Defendant represents (and Class Counsel reasonably believes following thorough investigation) it can promptly satisfy.

The Parties reached a Settlement that will globally resolve the Class Members' claims, allowing each to share in the Settlement Amount on a *pro rata* basis, and resulting in an average net settlement amount after attorneys' fees and expenses of approximately $1,600 per Class Member. This is more than a token amount and is consistent with the monetary recovery in other approved employment class settlements. *See Allen v. Bedolla*, 787 F.3d 1218, 1221 (9th Cir. 2015) (approving wage and hour settlement of $25 per class member); *Altamirano v. Shaw Indus., Inc.*, No. 13-CV-00939-HSG, 2015 WL 4512372, at *9 (N.D. Cal. 2015) ("[a]lthough 15% represents a modest fraction of the hypothetical maximum recovery estimated by Plaintiff, that figure is sufficient for the Court to grant preliminary approval given the merits of Plaintiff's claims").

### E.    The Extent of Discovery Completed and the Stage of the Proceedings

Under this factor, the Court analyzes the degree of case development to determine whether counsel sufficiently appreciated the merits of the case before negotiating a settlement. *Andersen*, 2022 WL 181262 at *5. The Parties have engaged in informal and formal discovery. The Parties prepared a discovery plan, which was entered by the Court on December 6, 2022 (ECF 12) and extended three times by stipulation while the Parties conducted discovery in good faith. The Parties exchanged initial disclosures and served written discovery relating to the composition of the Class and their respective theories of the case. Finally, the Parties attended a mediation on January 11, 2024 with a neutral third party. Although the Parties did not settle that day, they continued their negotiations and ultimately agreed to the Settlement. Given the litigation history, the extent of discovery completed, and

the current stage of the proceedings, the Parties fully grasped the merits and weaknesses of the case and were able to make an informed decision regarding settlement.

**F.    The Experience and Views of Counsel**

"Counsels' opinions" regarding the reasonableness of settlement "warrant great weight both because of their considerable familiarity with this litigation and because of their extensive experience in similar action." *Wash. Pub. Power Supply*, 720 F. Supp. at 1392. Where the litigation has been characterized "by aggressive advocacy and extraordinarily capable adversarial postures" and settlement negotiations reached "at arms' length and without any suggestion of undue influence," *id.*, the judgment of counsel as to the reasonableness of settlement should be trusted. Furthermore, where a settlement neutral has been engaged in the negotiations, there is further reason to conclude the negotiations were undertaken in good faith and untainted by undue influence. *Id.*

Class Counsel firmly believes the Settlement is fair, reasonable, and in the best interests of the Class Members. Class Counsel is highly experienced in class action litigation and well-positioned to evaluate the merits of continued litigation and the reasonableness of the Settlement. They have recovered millions of dollars for class members in other WARN Act class actions. Defendant is represented by counsel with a combined 40+ years in employment defense and bankruptcy law experience, including in class and collective actions. They agree the Settlement is fair. Plaintiff and Class Members will receive a sizable distribution without several years of litigation. They agree with the reasonableness of this resolution that will resolve claims against Defendant and avoid bankruptcy. Finally, the settlement followed a full day of mediation with a neutral with extensive class action experience, confirming the Settlement Amount accounts for the merits and risks of the Parties' respective positions.

**G.    The Reaction of the Class Members of the Proposed Settlement**

Class Counsel believes, based on more than two decades of experience litigating WARN Act actions in district and bankruptcy courts, that the Class Members will approve of the Settlement and few, if any, will object to its terms.

**V.**

1 **PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT**

2     **A.    Approval of Settlement Agreement Under Rule 23**

3     Rule 23(e) governs a district court's analysis of the fairness of a settlement of a class

4 action. To approve a class action settlement, the Court must determine whether the settlement

5 is "fundamentally fair, adequate and reasonable." *In re Rambus Inc. Deriv. Litig.*, No. C-06-

6 3515 JF (HRL), 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009); *see also In re Mego Fin.*

7 *Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Preliminary approval of a proposed

8 settlement is the first step in making this determination. As a matter of "express public

9 policy," federal courts encourage settlements, particularly in class actions, where the costs,

10 delays, and risks of continued litigation might otherwise overwhelm any potential benefit the

11 class could hope to obtain. *City of Seattle*, 955 F.2d at 1276; *see also*, 4 Herbert B. Newberg

12 & Alba Conte, Newberg on Class Actions §11:41 (4th ed. 2002).

13     Although Fed. R. Civ. P. 23(e) does not specify how a court should review a class

14 action settlement, a number of courts have adopted a two-step procedure, consisting of

15 preliminary approval of the settlement before notice is given to class members and a

16 subsequent "fairness hearing" at which all class members have an opportunity to be heard on

17 whether final approval of the settlement should be granted. *Hanlon v. Chrysler Corp.*, 150

18 F.3d 1011, 1027 (9th Cir. 1998) (fairness hearings for approval of class settlement "reveal an

19 exhaustive presentation by the objectors raising virtually all of the issues noted in the briefs

20 and in oral argument before this court.").

21     The Manual for Complex Litigation (Fourth) (2004) ("Manual") describes the

22 procedure for approving class action settlements: (1) preliminary approval of the proposed

23 settlement; (2) dissemination of the notice of the settlement to class members, providing for,

24 among other things, a period for potential objectors and dissenters to raise challenges to the

25 settlement's reasonableness; and (3) a formal fairness and final settlement approval hearing.

26 *Id.* at § 21.63. Consistent with this procedure, the Parties ask the Court to preliminarily

27

28

1 approve the Settlement Agreement, approve the form of the Class Notice and, after the final

2 fairness hearing, enter an Order approving the Settlement Agreement on a final basis.

3 **B.    A Presumption of Fairness Applies to the Settlement Agreement**

4 If "the proposed settlement appears to be the product of serious, informed, non-

5 collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

6 treatment to class representative or segments of the class, and falls within the range of possible

7 approval, then the court should direct that the notice be given to the class members of a formal

8 fairness hearing." *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1079 (N.D. Cal.

9 2007); *see also In re Netflix Privacy Litig*., No. 5:11-CV-00379 EJD, 2013 WL 1120801, at

10 *4 (N.D. Cal. Mar. 18, 2013) (applying at preliminary approval a "presumption" of fairness

11 to settlement that was "the product of non-collusive, arms' length negotiations conducted by

12 capable and experienced counsel"). "The preliminary determination establishes an initial

13 presumption of fairness." *Tableware*, 484 F. Supp. 2d at 1079-80. "Although Rule 23 imposes

14 strict procedural requirements on the approval of a class settlement, a district court's only role

15 in reviewing the substance of that settlement is to ensure that it is 'fair, adequate, and free

16 from collusion.'" *Lane v. Facebook, Inc*., 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*,

17 150 F.3d at 1027).

18 The Parties here worked cooperatively in exchanging information through discovery

19 and by negotiating at arms' length with the assistance of a mediator. The Parties conferred

20 and exchanged information prior to informal settlement negotiations, as well as in advance of

21 the mediation on January 11, 2024. Thus, the Parties were able to make an informed decision

22 regarding settlement. The Parties believe the Settlement is in the best interest of the Parties,

23 considering the costs and risks of continued litigation and potential difficulties of judgment

24 collection.

25 The proposed Settlement satisfies the standard for preliminary approval as it is within

26 the range of possible approval and there are no grounds to doubt its fairness. Although

27 Defendant contends the WARN Act claims are meritless, if Plaintiff prevailed, her counsel

28

would be entitled to attorneys' fees and costs. *In re Arrow Transport Co. of Del.*, 224 B.R. 457, 461 (D. Or. 1998) ("[The WARN Act] … is what is commonly called a fee-shifting statute.") The Settlement resolves the disputes over and uncertainty posed by these issues, provides the Class Members with payments on the Effective Date, and provides for dismissal of this Action. Thus, the Parties believe the Settlement will provide substantial benefits to Class Members, reduce litigation costs, eliminate uncertainty, and provide finality to Defendant regarding a relatively large potential claim.

## VI.    FINAL APPROVAL OF THE SETTLEMENT

FED. R. CIV. P. 23(e)(1)(C) provides that "[t]he court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate." The Parties submit that, at the Fairness Hearing, the Settlement should be finally approved as fair, reasonable, and adequate to the Settlement Class for the following reasons:

- Full litigation, trial, and possible appeal of the WARN Action would be complicated, protracted, and expensive. The Class Representative supports the Settlement and Class Counsel believes the bulk of the other Class Members will have a favorable reaction to the Settlement.

- The Settlement was reached after the essential facts had been thoroughly investigated by Class Counsel, including information provided by Defendant in formal and informal discovery for over a year.

- Class Counsel believes the Settlement is fair, reasonable, and in the best interests of the Class.

- The risks of being unable to fully establish liability and damages are present because of the plausible affirmative defenses Defendant asserts.

- The Settlement provides for Class Members to receive their share of the Settlement Amount on or as soon as reasonably practicable after the Settlement is approved.

- The Settlement is within the range of reasonableness given the uncertainty of establishing liability and damages.

## VII.    APPROVAL OF CLASS COUNSEL'S FEES AND EXPENSES

Class Counsel is entitled to be paid a fee out of the Settlement fund created for the benefit of the Class. FED. R. CIV. P. 23(h); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79

(1980); *Blum v. Stenson,* 465 U.S. 886, 900 n. 16 (1984) (calculation of fees based on the common-fund doctrine is based on a percentage of the common fund recovered). Defendant does not oppose this request and is neutral as to the points discussed in this section.

The Ninth Circuit has approved two methods of determining attorneys' fees in cases where, as here, the amount of the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002). The district court retains discretion in common fund cases to choose either method. *Id.*

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. *Id.* "The percentage method is particularly appropriate in common fund cases[ ] where 'the benefit to the class is easily quantified.'" *Ontiveros v. Zamora*, 303 F.R.D. 356, 372 (E.D. Cal. 2014) (quoting *Bluetooth*, 654 F.3d at 942). In the Ninth Circuit, a 25% award is the "benchmark" amount of attorneys' fees, but courts may adjust this figure upwards or downwards if the record shows "'special circumstances' justifying a departure." *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990)). In class settlements with easily quantifiable benefits to class members, the courts "have consistently approved of attorney fee awards over the 25% benchmark[,]" specifically at a rate of "30% or higher." *Bellinghausen*, 306 F.R.D. at 259-60, *citing In re Heritage Bond Litig.,* No. 02–ML–1475 DT, 2005 WL 1594403, at *18-19 (C.D. Cal. June 10, 2005) (awarding attorneys' fees in the amount of 33% of the common fund); *Jordan v. Michael Page Intl., Inc.*, No. SACV181328JVSDFMX, 2020 WL 4919732, at *9 (C.D. Cal. Jul. 2, 2020) (awarding 33% as "generally in line with awards made in similar sized common fund class actions litigated" in the jurisdiction), citing *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (describing cases awarding one-third of common fund and awarding counsel one-third of common fund).

Moreover, when counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award. *Pac. Enters.*, 47 F.3d at 379 (awarding 33% of $12 million common settlement fund); *Mego*, 213 F.3d at 460 (affirming award of fees equal to one-third of total recovery). An attorneys' fee of one-third of the settlement fund is routinely found to be reasonable in class actions. *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, No. 07-3072-AHM, 2009 WL 9100391, at *4 (C.D. Cal. Jun. 24, 2009) ("Nationally, the average percentage of the fund award in class actions is approximately one-third."); *Romero v. Producers Dairy Foods, Inc.*, No. 05-484, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) ("fee awards in class actions average around one-third of the recovery") (quoting NEWBERG, § 14.6).

Here, one-third of the Settlement Amount (net of expenses, the Class Representative's service payment, and the cost of the Settlement Administrator) represents 70% of Class Counsel's current lodestar. Class Counsel has expended more than 530 hours litigating the WARN Action and estimates it will expend an additional 30 hours preparing and attending the preliminary and final approval hearings, overseeing the mailing of the Settlement notice, responding to Class Members' inquires, and overseeing the distribution of the Settlement. The lodestar cross-check shows that Class Counsel's requested fees are reasonable and will not result in a windfall.

When assessing whether the percentage requested is reasonable, courts look to factors such as: "(a) the results achieved; (b) the risk of litigation; (c) the skill required, (d) the quality of work; (e) the contingent nature of the fee and the financial burden; and (f) the awards made in similar cases." *Vasquez*, 266 F.R.D. at 482, *citing Vizcaino,* 290 F.3d at 1047. Analysis of these factors favor approval of Class Counsel's attorneys' fees and costs, including its request for an award of one-third of the Settlement Fund.

### A.    The Results Achieved

Considering the legal and factual complexities of this case, the Settlement is a favorable outcome for the Class. That these funds are available without the uncertainty of

trial and are being delivered through this expeditious Settlement rather than after another several years of litigation, reduction of the common fund payable to Class Members by legal expenditures in connection with dispositive motion briefing and trial, and appeal qualifies the results as excellent under any reasonable assessment. The Class Representative supports the Settlement, and Class Counsel believes that few, if any, Class Members will object and that those objections, if any, will not be substantial or merited.

**B.     The Risk of Litigation**

Although each side believes it will prevail in litigation, the WARN Action is a zero-sum game. Given the complexity of the issues raised and the strengths of each Party's position, continued litigation, including appeals, is inherently risky. *See Nobles*, 2009 WL 1854965, at \*2 ("The risks and certainty of recovery in continued litigation are factors for the Court to balance in determining whether the Settlement is fair.") (citing *Mego*, 213 F.3d at 458); *Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951, at \*5 (N.D. Cal. Nov. 28, 2012) ("The substantial and immediate relief provided to the Class under the Settlement weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal, as well as the financial wherewithal of the defendant.").

Here, there exist significant, complex legal and factual issues regarding the application of the WARN Act, including whether the purported manner in which Defendant notified its employees of their terminations provided sufficient notice to the Class Members in accordance with the WARN Act and whether Defendant prevails on its affirmative defenses. As to the latter, Defendant contends that evidence adduced through discovery supports Defendant's claim that it was unable to employ the affected employees for a full 60 days after issuing notice due to unanticipated factors such as a Hospital purchaser reneging on an agreement to purchase the Hospital and a hospitalist provider group refusing to staff the emergency department and making it irremediably unsafe for the Hospital to remain open to the public. The Parties spent many hours in discovery, analyzed payroll data, exchanged legal memoranda, and engaged in informal negotiations and mediation. Continued litigation

would be costly and time-consuming. The proposed Settlement provides the Parties with certainty and reduces the costs and risks attendant with further litigation.

### C.    The Skill Required

Raisner Roupinian LLP has substantial experience in class actions on behalf of employees and, specifically, WARN Act class actions. Jack A. Raisner and René S. Roupinian, founding partners of the New York-based law firm of Raisner Roupinian LLP, along with Gail C. Lin, who is Of Counsel to the firm, and associate Isaac Raisner, have represented thousands of former employees in more than 150 WARN Act cases in district, bankruptcy, and appellate courts. *See* Roupinian Decl. Class Counsel was retained by the Class Representative based on their experience. The paucity of expert WARN Act counsel implies few, if any, have the skill, experience, and expertise required to handle such cases. As shown by the Settlement achieved in the face of difficult liability issues, Class Counsel provided legal services with considerable skill, favoring granting the requested fees.

### D.    The Quality of Work

Class Counsel made a significant investment of time to achieve the proposed Settlement. Class Counsel undertook discovery, conducted thorough research of the legal and factual issues, participated in status conferences with the Court, prepared legal memoranda, compiled extensive damage calculations, and participated in a mediation and subsequent negotiations that resulted in the Settlement.

### E.    The Contingent Nature of the Fee and the Financial Burden

Class Counsel pursued this case on contingency without any assurance of payment. Moreover, given Defendant's financial condition, there is a very real possibility that, even if Class Counsel prevailed on liability and was awarded a judgment, they would face challenges collecting on that judgment. The demands of this type of litigation overwhelm the resources and deter participation of many traditional claimants' firms. The risk of non-payment was real, as it was not known whether a class would be certified or sufficient funds would be available to pay these claims. The risk of non-payment was increased by Defendant's asserted

defenses. Class Counsel stood to gain nothing if Defendant prevailed. Because Class Counsel have borne this attendant risk, the Court should grant the requested attorneys' fees.

**F.    Awards Made in Similar Cases**

Class Counsel has consistently been awarded fees of approximately one-third of the class recovery in WARN Act cases by District and Bankruptcy Courts across the country, including courts in the Ninth Circuit.[1] In addition to an attorneys' fee of one-third of the common fund, Class Counsel is seeking reimbursement for out-of-pocket litigation expenses not to exceed $25,000. Defendant does not oppose the attorneys' fees and costs request.

---

[1] Indeed, as set forth in the *Declaration of René S. Roupinian in Support of Joint Motion for Preliminary Approval of Settlement* ("Roupinian Decl."), Class Counsel has been routinely awarded attorneys' fees of one-third in common fund settlements of WARN Act actions. Roupinian Decl., at ¶ 5. *See, e.g., Miranda v. DC Solar Solutions, Inc.,* Adv. Proc. No. 19-5002-GS (Bankr. D. Nev.) ($400,000 settlement); *Binford v. First Magnus Capital, Inc.,* Adv. Proc. No. 08 -01494 (Bankr. D. Ariz.) (awarding attorneys' fees of one-third in $2.6 million settlement and $2.9 million contingent proceeds); *Phillips v. Munchery, Inc.*, Case No. 19-cv-00469-JSC (N.D. Cal.) ($400,000 settlement); *Wojciechowski v. ClearEdge Power, Inc.,* Adv. Proc. No. 14-04152-CN (Bankr. N.D. Cal.) ($1.3 million WARN settlement); *Capizzi v. AWTR Liquidation, Inc. f/k/a Rhythm and Hues, Inc.*, Adv. Proc. No. 2:13-ap-01463-NB (Bankr. C.D. Cal.) ($1 million settlement); *Martz-Gomez v. Anna's Linens, Inc.,* Case No. 8:15-bk-13008-TA (Bankr. C.D.Cal.) ($1.2 million settlement).

## VIII.    APPROVAL OF THE CLASS REPRESENTATIVE'S SERVICE AWARD

Named plaintiffs in class actions play a crucial role in bringing justice to others at personal sacrifice. Here, Plaintiff filed a federal lawsuit that is searchable on the internet and may become known to prospective employers. The Class Representative retained Class Counsel to commence this action after her employment relationship with Defendant ended and her employment prospects could be dimmed by suing her former employer. Plaintiff could have done nothing and waited to receive the same benefits as any other Settlement Class member. Instead, she took on the risks to her employment prospects; the time commitments; and the personal burdens associated with being involved in complex class litigation.

Plaintiff should be awarded a service payment for the significant work she undertook on behalf of the Class. *See, e.g., Mirkarimi v. Nevada Prop. 1, LLC*, No. 12CV2160 BTM (DHB), 2016 WL 795878, at *6 (S.D. Cal. Feb. 29, 2016) (approving $30,000 incentive award where class representative "took a financial risk" by taking time away from his current job and spent "a total of 120 hours of work, both preparing for and participating in the litigation"); *Raymond Alfred v. Pepperidge Farm*, No. LA CV14-07086 JAK, 2022 WL 17066171 at *14 (C.D. Cal. March 4, 2022) ($25,000 incentive award reasonable in wage and hour class settlement). Here, Plaintiff assisted with the preparation of the Complaint and the class certification motion and spent significant time speaking to Class Counsel and former employees. She maintained regular communication with Class Counsel regarding case progress, assisted with informal discovery, and actively participated in mediation. Plaintiff provided a valuable and critical service to the Settlement Class without which the Settlement would not have come about. Defendant does not oppose the proposed $12,500 service payment. Accordingly, the Parties seek approval of the service payment to the Class Representative, in addition to her participation in the Settlement as a Class Member.

## IX.    MANNER OF NOTICE OF SETTLEMENT TO THE CLASS

Upon preliminary approval of the Settlement Agreement, approving the form and manner of notice to the members of the Class, and scheduling a Fairness Hearing, the Parties

propose that the Notice of the Proposed Settlement of Class Action and Fairness Hearing be served on all Settlement Class Members by first class mail.

Although no rigid standards govern the contents of notice to Class Members, a class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 361 F.3d at 575. Here, the proposed Class Notice is accurate, informative, and readable by the average person and satisfies all the requirements of Rule 23(c)(2)(B). It provides key information about the Settlement Agreement, as well as the date, time, and place of the final hearing to consider approval of the Settlement Agreement. The Class Notice also states that Settlement Class Members will be bound by the Settlement; explains how to object to the Settlement; and is neutral as to the merits of the proposed Settlement. *Calderon v. Wolf Firm*, No. SACV16-1266-JLSKESx, 2018 WL 6843723, at *10 (C.D. Cal. Mar. 13, 2018) (citing FED. R. CIV. P. 23(c)(2)(B)).

Service of the Class Notice by first class mail, postage prepaid, to each Settlement Class Member's last known address is the best notice practicable because the Class is objectively defined and readily identifiable. *See Manual* § 21.222. Mailing the Class Notice to the Settlement Class members' home addresses, with Class Counsel following up on any undeliverable mailings, will provide Class Members with the greatest opportunity to receive notice. *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (notice by mail is a sufficient form of delivery so long as notice is "reasonably calculated…to apprise parties of the pendency of the action and afford them an opportunity to present their objections"). The Parties submit that no other or further notice need be given.

## X.    <u>FINAL APPROVAL OF SETTLEMENT</u>

The Court's entry of an Order granting preliminary approval of settlement would, among other things, 1) preliminarily approve the Settlement Agreement, 2) direct notice to the Class and 3) schedule a fairness hearing to consider final approval of the Settlement

Agreement. As reflected in the proposed Order granting Preliminary Approval of Settlement, the Parties propose the following schedule:

- *Deadline for Notice of Settlement to be mailed to Class Members*: 15 business days after entry of the Order granting Preliminary Approval of Settlement,

- *Deadline to Object to Settlement*: 10 days before Final Fairness hearing,

- *Final Fairness Hearing*: 45 calendar days after Class Counsel mails the Notice of Settlement to Class Members, or as otherwise directed by the Court.

## XI.    <u>CONCLUSION</u>

For the reasons set forth above, the Parties respectfully request that the Court grant the Motion in its entirety.

DATED:  August 22, 2024

SQUIRE PATTON BOGGS (US) LLP

By: *<u>/s/Laura Lawless          (with permission)</u>*
Laura Lawless
Kelly Singer

*Attorneys for Defendant*

WATERFALL, ECONOMIDIS, CALDWELL, HANSHAW & VILLAMANA, P.C.

By: *<u>/s/Corey B. Larson</u>*
Corey B. Larson

-and-

RAISNER ROUPINIAN LLP
René S. Roupinian
Jack A. Raisner

*Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2024, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of same to counsel for Defendant:

Laura Lawless (023951)
Laura.Lawless@squirepb.com
Kelly A. Singer (022024)
Kelly.Singer@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Telephone: (602) 528-4000
Facsimile: (602) 253-8129
*Attorneys for Defendant*

*s/Corey B. Larson*
Corey B. Larson

1102257724\2\AMERICAS